STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT, *v.* ST. JOHN'S CHURCH, MARLBORO, N. J., A CORPORATION OF NEW JERSEY, *ET . AL.*, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted June 8, 1976—Decided June 23, 1976.

Before Judges LYNCH, LARNER and HORN.

*Mr. William F. Hyland,* Attorney General, attorney for appellant (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Messrs. Richard L. Voliva, Jr.* and *Stephen A. Herman,* Deputy Attorneys General, on the brief).

*Mr. Robert E. La Mura,* attorney for respondent St. John's Church.

The opinion of the court was delivered by

LYNCH, P. J. A. D. In March 1969 the State of New Jersey by the Commissioner of Transportation (State) filed a complaint seeking to condemn a strip of land fronting on Route 79 which was part of the property on which defendant St. John's Roman Catholic Chuch was located. The purpose of the taking was to permit installation of a concrete divider between the two lanes of Route 79 and to make possible the broadening of the road's shoulders from six to ten feet in width.

Prior to the condemnation the church's land fronted on Route 79 for 150 feet and was about 170 feet deep. The door of the church was about 53 feet from the travelled portion of the highway. The area to be taken by the State consisted of a strip approximately 17 feet in depth along the entire

frontage of the church property plus a slope easement vary-
ing from zero to two feet of encroachment. The land to be
taken contained trees, a hedge, a sidewalk and part of two
driveways used by the church for ingress and egress to its
property. The trees and the hedge, which had screened the
church from the highway, were destroyed during construc-
tion. After an amendment of the complaint it was apparent
that, after the taking, the door of the church would be 41
feet from the travelled portion of the highway and that
the State's right of way would extend into the lower steps
of the church entrance. By its amended complaint, the
State pledged that the steps which encroached on its right
of way would be allowed to remain.

After construction of the highway began, use of the prop-
erty for church purposes was abandoned. Defendant church
filed a counterclaim wherein it sought to compel the State
to condemn its entire property. The church contended that,
as a result of the taking, safe and free access to the church
was denied, the church was laid open to traffic noises in-
compatible with religious worship and that, in sum, the
taking "constituted 100% damage to the remainder and de-
fendant's use of the premises for religious purposes would be
completely denied."

Defendant's counterclaim came on for trial. The trial
judge, in an oral opinion, found as a fact that the damages
to St. John's Church were different in kind from those suf-
fered by other property owners; that as a result of the tak-
ing there was not safe access to the property for use as a
church; that the State's right of way intruded seven inches
within the first step leading into the church, and finally,
that there was a "loss of beneficial use to the Defendant of
the use of the premises as a Roman Catholic Church in that
it is unable to conduct the Roman rites of said Church as
testified to as being required by the Pastor of the Church,
and that testimony is uncontradicted." Based upon these
findings, the judge held that the taking by the State was
"a whole taking of the entire premises of St. John's Church,"

and that the condemnation proceeding was to proceed to determine the damages, "on the basis of a taking of the whole premises * * *." The trial court later clarified its order by stating that the church was "entitled to have the State take the whole parcel."

The State appeals. It does not dispute the trial judge's finding that defendant was deprived of the use of its building for church purposes. However, the State contends correctly that defendant made no effort to show that its property was unfit for all uses. Therefore, the State argues that since there was admittedly a partial taking here, the traditional measure of damages for such a taking should apply. Thus, the compensation to be paid should be measured by either (1) the value of the property actually taken plus the amount of any diminution in value that results to the remainder, or (2) the difference in the value of the entire property before the taking and the value of the remainder after the taking. *State v. Cooper Alloy Corp.,* 136 *N. J. Super.* 560, 567–568 (App. Div. 1975) ; *State v. Interpace Corp.,* 130 *N. J. Super.* 322, 329 (App. Div. 1974).

In its oral opinion directing condemnation of the "whole premises" the trial judge relied principally on *Morristown Bd. of Ed. v. Palmer,* 88 *N. J. Super.* 378 (App. Div. 1965), rev'd as premature 46 *N. J.* 522 (1966). The court construed the Appellate Division opinion there as holding that whenever a property owner is deprived of the beneficial use of its property by action of a public authority, there must be a condemnation of the entire parcel. We respectfully disagree. The issue in the *Morristown* case was whether there can be a "taking" of property in the constitutional sense (*U. S. Const.,* Amend. V; *N. J. Const.* (1947), Art. I, ¶ 20) absent a physical invasion of the property or a direct restraint on its use. The Appellate Division held that if danger, noise and fumes resulting from construction of a highway near school property would destroy the use of the property for school purposes, there would be a "taking" in the constitutional sense and the school board would be entitled to

compensation even though there was no physical invasion of the property. The Supreme Court reversed on the ground that the court's determination of the facts was "hypothetical"; that the effect on the school was "speculative" because the construction work had not begun, and that the action was therefore premature. The Supreme Court expressly withheld any opinion as to whether the conditions described by the Appellate Division "can be considered such a taking as would expose the Highway Department to liability to pay compensation to the property owner." 46 *N. J.* at 525–526.

[2] In the *Morristown* case neither the Appellate Division nor the Supreme Court considered the question of what the appropriate remedy would be if it were found that a taking had occurred. However, this issue was addressed in *Washington Market Enterprises v. Trenton,* 68 *N. J.* 107 (1975). In that case the Supreme Court adopted the view of the Appellate Division in *Morristown* and held specifically that where the threat of condemnation destroys the beneficial use of property there is a "taking" in the constitutional sense, even in the absence of a physical invasion. However, that determination is irrelevant here. In the present case it is admitted that there was a physical invasion of defendant's property, to wit, the partial taking of the 17-foot strip and the slope easement. The task for the court here was to determine to what remedy the church is entitled on account of that taking. In *Washington Market Enterprises,* the court, realizing that a "taking" entitles the property owner to compensation but not necessarily to condemnation, expressly rejected the plaintiff's request to compel condemnation of its whole parcel:

Generally speaking, condemnation should be ordered only where eventual acquisition appears inevitable * * * or where equitable considerations mandate that remedy. A private person is generally better able to develop and exploit a piece of real estate than is a municipality and as a matter of policy it is undesirable to remove ratables from the tax rolls. We think it inappropriate to grant this form of relief here.

If, however, the plaintiff is successful in its proofs, it should be entitled to damages. [68 *N. J.* at 123]

■■ Although the court's reference to the undesirability of removing ratables from the tax rolls does not presently apply to the church property here since it is exempt in its religious use, that exemption will be removed when the remainder of the property is developed for a nonexempt use. At any rate, we agree with the Supreme Court that the proper remedy is to permit the private owner to collect damages and keep title to the land not taken, rather than to order the State to take title to the whole premises. As reiterated in *Washington Market Enterprises*:

In partial taking cases, for instance in the construction of a highway, the landowner is entitled to be paid the value of the land taken, together with the diminution in value of the part that remains (severance value). [68 *N. J.* at 117]

■ ■ Upon a taking of property the owner is only entitled to be paid for what he has lost. Defendant has not lost all of its property by the taking of the 17-foot strip and the slope easement. It retains the remainder of its land. It is probable that the church building on the remainder is of little, if any, value. However, except in the unlikely event that the remaining land also has no value, defendant retains property with a worth which can be realized. It is not entitled to be paid for what it still owns.

■ The judgment is reversed and the matter is remanded to the condemnation commissioners for a determination of defendant's proper compensation for the partial taking of its land and the damage to the remainder of the property in accordance with the views expressed herein. We do not retain jurisdiction.